**ADVANCE TRANSPORTATION COMPANY, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL NO. 710, Defendant.**

No. 95 C 7279.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 1, 1996.

Leonard R. Kofkin, Chicago, IL, Steven Jay Teplinsky, Donald Joseph Vogel, Fagel & Haber, Chicago, IL, for Plaintiff.

Patricia Anne Collins, Marvin Gittler, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, for Defendant.

### OPINION AND ORDER

NORGLE, District Judge:

Plaintiff Advance Transportation Company ("Advance") filed this action against Defendant International Brotherhood of Teamsters, Local No. 710 ("Local 710") seeking to vacate an arbitrator's determination that Advance violated a collective bargaining agreement ("CBA") by the manner in which it terminated a certain unionized employee, Charles Coleman ("Coleman"). Before the court are the parties' cross motions for summary judgment. For the following reasons, Advance's motion is denied and Local 710's motion is granted.

---

1. The following is a summary of the instant arbi-

## I. Applicable Legal Standards

Summary judgment will be granted only where there are no remaining genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Amax Coal Co. v. United Mine Workers of Am. Int'l Union,* 92 F.3d 571 (7th Cir.1996). Judicial review of labor arbitration awards is limited, as arbitration is intended to produce final resolution of disputes. *National Wrecking Co. v. International Bhd. of Teamsters, Local 731,* 990 F.2d 957, 960 (7th Cir. 1993) ("Arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party").

Rather, when reviewing arbitration awards, courts will ask only whether the awards draw their essence from the relevant collective bargaining agreements in some rational manner. *Jasper Cabinet Co. v. United Steelworkers of Am., AFL–CIO–CLC, Upholstery & Allied Div.,* 77 F.3d 1025, 1028 (7th Cir.1996). Federal district courts may not set aside arbitration awards for factual or legal errors, provided the awards contain honest decisions of the arbitrators, reached after full and fair hearings of the parties. *National Wrecking,* 990 F.2d at 960. Awards will be vacated only where there is no logical interpretive route between the collective bargaining agreements and the awards. *Arch of Ill., Div. of Apogee Coal Corp. v. District 12, United Mine Workers of Am.,* 85 F.3d 1289, 1293–94 (7th Cir.1996). Courts must resolve disputes in favor of enforcement where there exists any reasonable amount of doubt regarding whether the award contains such a logical connection. *Jasper,* 77 F.3d at 1028–29.

### II. Arbitration Award [1].

#### A. Facts

Coleman worked as a commercial truck driver for Advance over approximately eighteen years. Coleman was a member of Local 710 and part of the unit of employees covered by the CBA between Advance and Local 710.

The CBA incorporates certain drug and alcohol policies, including a provision for random drug and alcohol testing in accordance

---

tration award.

with federal regulations. Advance contracts with an outside firm to perform a computerized random selection of drivers for testing.

On April 17, 1995, Coleman was randomly selected for testing.[2] At the beginning of his shift, around 9:00 a.m., Margaret Oesterreicher ("Oesterreicher"), the Office Manager's assistant, informed Coleman that he had been selected. Although the test site was five minutes from Advance, Coleman performed approximately eight hours of his normal work for the day before reporting to the clinic at 6:00 p.m. His test results were negative.

Advance's Terminal Manager believed that Coleman should have proceeded to the clinic immediately after being informed of the selection. On April 19, 1995, after consulting the Regional General Manager, the Terminal Manager issued a letter to Coleman. The letter cited the CBA as well as Department of Transportation and Federal Highway regulations, and stated that Coleman violated those regulations. Therefore, continued the letter, Advance discharged Coleman.

Coleman took issue with his discharge and filed a grievance on April 25, 1995. The Union advanced the matter to arbitration when grievance procedures did not result in settlement. The parties mutually selected Arbitrator Steven Briggs to conduct the arbitration hearing and issue a final and binding decision. The hearing was transcribed, and both parties presented closing oral arguments.

The parties stipulated to the following statement of the arbitration issue: "Was the Grievant, Charles Coleman, terminated for just cause? If not, what is the appropriate remedy?"

### B. Relevant CBA Provisions

The relevant CBA provisions cited by the Arbitrator include the provision adopting the drug testing program as well as the following:

*ARTICLE 24. DISCHARGE*

The Employer shall not discharge nor suspend any employee without just cause.

With respect to discharge ... the Employer shall give at least one warning notice of the complaint against such employee to the employee in writing and a copy of the same to the Local Union ... except that no warning notice need be give to an employee before he is discharged if the cause of such discharge is dishonesty or drunkenness, which shall be verified by a blood alcohol test. Refusal to take a blood alcohol test shall establish a presumption of drunkenness....

### C. The Parties' Positions

#### 1. Local 710/Coleman

Local 710 asserted that Advance discharged Coleman without just cause. Local 710 stated that the applicable federal regulations did not mandate that Coleman proceed immediately to testing. Local 710 noted that, instead, the regulations provide that the "employer" shall require drivers to do so.

Local 710 averred that Advance never communicated to Coleman that he was to proceed immediately. Thus, Local 710 said Coleman should not be held responsible for knowing about a regulation directed to employers. Although Advance could easily have posted a bulletin advising drivers to go immediately to testing clinics, it did not do so.

Local 710 maintained that Coleman did not know that he was to proceed to the testing clinic immediately. Oesterreicher did not tell Coleman to go to the clinic immediately in the view of Local 710. Although the Office Manager testified that she tells employees to proceed immediately to the clinic for testing, Oesterreicher offered no such testimony. Various Local 710 witnesses testified that they were totally unaware of a requirement to proceed to the clinic immediately. One driver testified that he did not go to the clinic until five hours after notification in August 1994. Furthermore, when Coleman himself was selected for testing in February 1995, he did proceed immediately to the clinic. Thus, according to Local 710, he had no reason to believe that he was required to do so.

**2.** There is no evidence that Coleman was suspected of being under the influence of drugs or alcohol at the time the computer selected him for testing. No one opined that Coleman was drunk.

Accordingly, Coleman went to his Dispatchers for directions after Oesterreicher gave him only a brief extension of time for his first delivery. Dispatcher Blake testified that he did not tell Coleman to make deliveries before going to the clinic. However, Local 710 contended that this testimony supported Dispatcher Blake's own interest in his job by supporting the position of Blake's employer, Advance.

After making the first delivery according to Dispatcher Blake's instructions, Coleman called Dispatcher Litza, who told him to make another stop. Local 710 maintained that, when Coleman reminded Dispatcher Litza of the testing, Dispatcher Litza told Coleman to call after the second stop. Around 3:10 p.m., Coleman called Dispatcher Litza again, who gave Coleman two additional stops. When Coleman reminded Dispatcher Litza of the testing again, Dispatcher Litza told Coleman to take his lunch and go to the clinic, which Coleman did. Local 710 argued that Advance's failure to call Dispatcher Litza to testify leaves a gap in the record which should create a negative inference against Advance's position.

When Coleman arrived at the clinic, approximately two hours passed before he was given a breath alcohol test, which, according to Local 710, casts doubt on Advance's argument that it insists upon immediate testing.

Although Advance did offer reinstatement, its offer was conditioned upon drug/alcohol counseling, an embarrassing process. Local 710 therefore argued that Coleman's refusal of such a conditional reinstatement was reasonable.

Advance has fired Coleman five times in the past. Each time, he has been reinstated by an arbitrator, a joint board, or the National Labor Relations Board. Local 710 contended that such a pattern makes clear Advance's intent to "get rid of" him. Local 710 stated that this intent arises from Coleman's involvement in a dissident employee group which voiced its opposition to a proposed profit-sharing plan.

*2. Advance*

Advance maintained that it had just cause to fire Coleman. It stated that it made every reasonable attempt to acquaint drivers with federally-mandated drug and alcohol testing requirements. Advance argued that Coleman's alleged ignorance of the regulations was not a valid excuse for failing to submit to testing promptly: Coleman is a professional truck driver who should have understood the regulations. The testimony of Local 710 witnesses confirms that other employees told to take random tests have done so without delay. Coleman signed a document (which Advance submitted as an exhibit) indicating that he was aware of the consequences of refusing to take a drug/alcohol test.

When Oesterreicher informed Coleman that he had been selected, Coleman told her that he had an appointment on his delivery manifest for that morning. Oesterreicher then called the customer, who told Oesterreicher that a late delivery would be "no problem," so long as it occurred sometime that morning. Thus, averred Advance, Coleman had plenty of time to submit to testing without compromising his delivery schedule.

Advance contended that Coleman's version of the events of April 17 is not credible. Coleman testified in detail about his conversations with Oesterreicher and the Dispatchers. However, he failed to reference those conversations in his documentation of this matter, Local 710 did not reference them in its memoranda, and Coleman did not mention them before the grievance board.

According to Advance, Oesterreicher was a credible witness. Advance stated that her testimony was consistent with her earlier statement, in that both referred to her calling the customer, getting about one and one-half hours' leeway for Coleman, and telling Coleman to go to the clinic "now."

After Oesterreicher told Coleman to go to the clinic "now," Coleman apparently went to the Dispatchers, which Advance interpreted as "shopping for another opinion." Advance emphasized that Coleman's claim that Dispatcher Blake told him to make the first delivery before going to the clinic runs contrary to Blake's testimony. Also, Blake testified that he did not hear Dispatcher Litza tell Coleman to make any deliveries before taking the tests. Blake also stated that Dis-

patchers know that drivers must go immediately to the clinic when selected for testing.

Advance argued that Coleman knew that alcohol dissipates over time, which would explain his delay.

On April 19, 1995, Advance told Coleman that Advance would reinstate him if he went to a substance abuse professional for an evaluation, the evaluation did not identify a substance abuse problem, and a subsequent test confirmed that Coleman was not abusing alcohol. Thus, Advance states that any backpay obligation it may have had ended on that date.

### D. Arbitrator's Opinion

The Arbitrator began his opinion by stating, "One essential element of the just cause standard is that the employee must have knowledge of the rule allegedly violated and of the disciplinary consequences of a violation." Accordingly, he found that Advance had an obligation to ensure that Coleman knew that he could be terminated for failing to submit immediately to testing. The Arbitrator determined the following: (1) that Advance failed to meet its obligation, (2) that Coleman did not know of the immediacy requirement, (3) that Coleman could not have "refused" to immediate testing if he did not know of the immediacy requirement, and (4) therefore, that Advance lacked "just cause" to terminate Coleman without prior warning.

Advance's General Manager testified that Advance had no written rule which required employees to proceed immediately to the testing site after selection. The Arbitrator noted the conflicting testimony of Coleman, Dispatcher Blake, and Oesterreicher regarding whether Coleman was told to proceed "now." Coleman testified that Oesterreicher received only a forty-five minute "grace period" from the customer expecting Coleman's first delivery, and that there would not have been enough time for testing. Therefore, Coleman consulted the Dispatchers, as he was unsure what he should do. Blake testified that he did not tell Coleman to proceed to the first delivery.

The Arbitrator noted that, ordinarily, the testimony of two persons would overcome the

conflicting testimony of a third. However, because Advance failed to call Dispatcher Litza, a key player in Coleman's version of events, the Arbitrator questioned whether Dispatcher Litza would have confirmed Coleman's testimony, and drew a negative inference against Advance's overall position. Also, the Arbitrator found that Oesterreicher's testimony partially supported Coleman's version, in that she merely told him to go "now," rather than that he must proceed immediately or be fired. The Arbitrator also considered the testimony of other Local 710 witnesses who had not proceeded immediately to testing, and who had not been fired.

The Arbitrator went on to comment on several issues. He stated that nothing in the employee handbook section on testing clearly required employees to proceed immediately to the testing site. Further, he stated that, where a company's survival depends on timely deliveries, as does Advance's, such a requirement is not necessarily obvious to Advance's employees.

In addition, the Arbitrator found that Coleman had good reason to consult the Dispatchers after his conversation with Oesterreicher. The General Manager confirmed that Advance had not communicated with bargaining unit employees about which office personnel had authority to direct them to submit to testing. The General Manager also testified that neither the Office Manager herself nor Oesterreicher had any supervisory authority over Coleman. Therefore, concluded the Arbitrator, it was logical that Coleman would consult the Dispatchers.

The Arbitrator also considered Advance's conditional offer of reinstatement to Coleman. The Arbitrator found that reinstatement requiring alcohol/drug counseling and further testing would involve Coleman to submit to a process which, at least in Coleman's belief, involved a partial admission of guilt and, perhaps, the social stigma of being labeled a drug/alcohol abuser. The Arbitrator found such a belief reasonable and understandable.

In addition, the Arbitrator considered Advance's policy argument and the relevant regulations. Advance argued that Coleman should have known from the CBA and De-

partment of Transportation regulations that he would be fired if he did not proceed immediately. The specific language to which Advance referred stated: "Employees subject to random alcohol testing shall be tested within one (1) hour prior to starting the tour of duty, during the tour of duty, or immediately after completing the tour of duty." The Arbitrator found that Coleman might have reasonably believed that he could proceed to the clinic after completing his tour of duty.

The applicable Department of Transportation regulation reads, "Each employer shall require that each driver who is notified of selection for random alcohol and/or controlled substances testing proceeds to the test site immediately...." The Arbitrator held it "abundantly clear" from the regulation that Advance, rather than employees themselves, has a duty to insure immediate testing. He found that the record did not support a finding that Advance had met its duty or that it made the immediacy requirement clear to Coleman. As such, the Arbitrator found that Coleman did not knowingly violate the regulations.

Finally, Advance argued that reinstating Coleman to a safety-sensitive position without further testing and counseling would violate other Department of Transportation regulations because Coleman had refused a random drug test. As the Arbitrator found that Coleman made no such refusal (Coleman did eventually report for testing), the Arbitrator found no violation of regulations in the reinstatement.

For the foregoing reasons, the Arbitrator concluded that Advance did not terminate Coleman for just cause. As a remedy, the Arbitrator directed Advance to reinstate Coleman with benefits and with backpay from the date of termination to the date of reinstatement.

### III. Discussion

■ The standard of review is of such importance to the outcome of this case that restatement of the standard is appropriate: the court will vacate the arbitration award only if it does not draw its essence from the CBA. The court will not vacate an award where it contains an honest decision after a full and fair hearing, even if it contains factual or legal errors. *Ethyl Corp. v. United Steelworkers,* 768 F.2d 180, 183 (7th Cir. 1985).

■ In the instant case, the award draws its essence from the CBA. Advance terminated Coleman without prior warning. In reaching his decision, the Arbitrator interpreted the term "just cause" as it applies to termination without prior warning. Advance stated that it terminated Coleman without prior warning because he refused to submit to testing immediately. Had Coleman so refused, he would have been subject to discharge without prior warning pursuant to the provisions of the CBA.

However, the Arbitrator found that Coleman had not refused to submit to testing. In so finding, the Arbitrator read into the CBA's "just cause" provision a requirement that an employee know of a rule before the employee may be terminated for violating that rule. He stated that an employee cannot "refuse" to follow a rule of which the employee is not aware. Because the Arbitrator found that Coleman did not know that he was obligated to proceed immediately to the clinic, or that he was obligated to follow Oesterreicher's orders, the Arbitrator found that Coleman did not "refuse" testing. As such, the Arbitrator found that Advance could not terminate him without prior warning under the terms of the CBA. Accordingly, the Arbitrator ordered Advance to reinstate Coleman.

■ The Arbitrator's interpretation of the CBA's "just cause" provision was not illogical. The concept of just cause is flexible: it embodies the notions of equity and fairness, and remains open to the interpretations of arbitrators. *Arch of Ill., Div. of Apogee Coal Corp. v. District 12, United Mine Workers of Am.,* 85 F.3d 1289, 1294 (7th Cir.1996). The court finds reasonable the Arbitrator's requirement of knowledge for just cause termination based on refusal.

Nevertheless, Advance argues that enforcement of the arbitration award would run contrary to public policy, in that it would punish Advance for following CBA requirements and Department of Transportation regulations. Advance contends that it mere-

ly followed the CBA and Department of Transportation regulations when it fired Coleman for refusal to submit to testing.

The court recognizes the significant public policy at stake. However, this contention overlooks the Arbitrator's finding that Coleman did not "refuse" testing. The Department of Transportation regulations place upon Advance the obligation of making employees aware of the immediacy requirement. The Arbitrator found that Advance failed to do so. This court should not substitute its findings for those of the Arbitrator, who heard the witnesses and viewed the evidence at the hearing.

Also, Advance argues that its offer of conditional reinstatement followed the applicable regulations, because employees who have refused testing cannot be reinstated without drug/alcohol counseling and further testing. Again, the Arbitrator found that Coleman did not refuse testing, and, as such, that no counseling or further testing was necessary. The court will not disturb those factual findings, which draw their essence from the CBA. Accordingly, the arbitration award must be upheld.

### IV. *Conclusion*

The court notes the significant public policy issues which create a need for effective random drug testing. Such testing is intended to deter drug and alcohol use among workers who hold public safety in their hands. Immediacy is vital to this deterrence. Employers must ensure that their workers proceed immediately to clinics for testing. Employees must comply or be terminated. In the instant case, any deterrent effect was lost because of Coleman's ignorance of the immediacy requirement.

This court cannot say, given the standard of review, that the Arbitrator's decision was not honest, or that it was not based upon a full and fair hearing. For the foregoing reasons, Local 710's motion for summary judgment is granted; Advance's motion for summary judgment is denied.

IT IS SO ORDERED.